UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
ELSA LLAMBELIS, SONYA FRIDMAN, and ANITA
SAMUEL, individually and on behalf of all others
similarly situated,

                              Plaintiffs,

               -against-

                                                          **CLASS
                                                          ACTION
                                                          COMPLAINT**

VISITING NURSE SERVICE OF NEW YORK, and
HOWARD ZUCKER, as Commissioner
of the New York State Department of Health,

                              Defendants.
----------------------------------------------------------------------------x

1.     Plaintiffs ELSA LLAMBELIS, SONYA FRIDMAN and ANITA

SAMUEL bring this class action seeking injunctive and declaratory relief on behalf of

themselves and a class of all current and future New York City Medicaid recipients who

receive or will receive Medicaid-funded home care services through VISITING NURSE

SERVICE OF NEW YORK ("VNSNY") and who have suffered or who are at risk of

suffering a loss of critically important home care services as a result of Defendants'

systemic practices of reducing or threatening to reduce their necessary care without the

timely and adequate reduction notice required by law.

2.     As a result of their age and health conditions, Named Plaintiffs need daily

assistance with fundamental activities of daily life, such as bathing, dressing, using the

bathroom, and preparation of meals.  Without such assistance, they could not live safely

at home.

1

3.      Defendant VNSNY operates Medicaid Managed Long Term Care Plans ("MLTCPs") through which Medicaid recipients can receive medically necessary long term care services, including home care services.  VNSNY provides these services to Medicaid recipients in New York City who are over 18 years old, dually eligible for Medicaid and Medicare, and who are expected to need long term care services for at least 120 days.

4.      Defendant Zucker is the Commissioner of the New York State Department of Health and, as such, is required by law to ensure that all Medicaid recipients in the State receive the services and protections mandated by federal and state laws, regulations and constitutions.  The contracts between Zucker and VNSNY require VNSNY to comply with all applicable federal and state laws and regulations.

5.      In violation of Plaintiffs' constitutional rights to due process, and federal and state laws governing Medicaid, VNSNY is sending notices to recipients that purport to be denials of new requests for care but are in fact reductions of existing authorizations of care.

6.      Defendant Zucker is failing to ensure that VNSNY does not deprive enrollees of their constitutionally guaranteed due process rights.  He has failed to take any action to stop these unlawful reductions, even though he is well aware that they are occurring.  These unlawful practices effectively deny Plaintiffs of guaranteed notice and hearing rights and threaten drastic reductions in their vital care even though there has been no change in the Plaintiffs' medical conditions or circumstances.

7.      Plaintiffs seek injunctive and declaratory relief from Defendants' ongoing violations of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, its implementing regulations at

42 C.F.R. § 431.200 *et seq.* and § 438.100 *et seq.*, the New York State Social Services Law § 22 and its implementing regulations, and procedural and substantive Due Process rights guaranteed by the 14th Amendment to the U.S. Constitution and by the New York State Constitution.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  This action is authorized by 42 U.S.C. § 1983 as an action seeking redress of the deprivation of statutory and constitutional rights under color of law.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## PARTIES

10.      Named Plaintiff ELSA LLAMBELIS is an 86-year-old woman who lives alone in Manhattan. She is a recipient of Medicaid and Medicare who receives home care services through VNSNY.

11.      Named Plaintiff SONYA FRIDMAN is a 90-year-old woman who lives alone in Brooklyn.  She is a recipient of Medicaid and Medicare and receives home care services through VNSNY.

12.      Named Plaintiff ANITA SAMUEL is a 78-year-old woman who lives alone in the Bronx.  She is a recipient of Medicaid and Medicare and receives home care services through VNSNY.

13.      Defendant VNSNY is a New York State Not-For-Profit Corporation that owns and operates VNS Choice MLTC and VNS Choice Plus, which are both MLTCPs.

These MLTCPs authorize Medicaid-funded home care services to eligible Medicaid recipients. VNSNY maintains an office at 220 E. 42nd St., New York, New York.

14. Defendant HOWARD ZUCKER is the Commissioner of the New York State Department of Health ("DOH"), and as such is responsible for the administration of the Medicaid program in the State of New York. He maintains an office at Corning Tower, Empire State Plaza, Albany, New York.

## STATUTORY AND REGULATORY FRAMEWORK

15. The Medical Assistance Program ("Medicaid") is a joint federal-state program established under Title XIX of the Social Security Act ("Medicaid Act") to ensure that rehabilitation, medical care, nursing, and other services are provided to low-income and indigent people. 42 U.S.C. § 1396 *et seq.*; 42 C.F.R. § 430 *et seq.*

16. States that elect to participate in the Medicaid program must comply with requirements set out in federal law and regulations to be eligible for federal funds. 42 U.S.C. §§ 1396a, 1396c. Additionally, participating States must administer the Medicaid program according to a plan that has been federally approved. 42 U.S.C. §§ 1396-1, 1396a.

17. Federal law requires participating states to administer the Medicaid program through a "single state agency." 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(b)(1). While the single state agency may delegate certain functions, it is prohibited from delegating "the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters." 42 C.F.R. § 431.10(c), (e).

18. The single state agency responsible for the administration of the Medicaid program in New York is the New York State Department of Health, of which Defendant

Zucker is the Commissioner.  N.Y. Soc. Serv. Law § 363-a(1); 1996 N.Y. Laws Ch. 474, §§ 233–248.

### Role of Managed Long Term Care Plans (MLTCPs)

19.    With the approval of the Centers for Medicare and Medicaid Services of the United States Department of Health & Human Services ("CMS"), New York operates its Medicaid program using the New York Medicaid Redesign Team Section 1115 demonstration (formerly the New York Partnership Plan) that, in relevant part, requires most Medicaid recipients to enroll in a managed care organization ("MCO") with which DOH has contracted.

20.    MCOs are health insurance entities that contract with State Medicaid programs to provide Medicaid recipients with a package of covered services in exchange for payment by the State of a fixed amount per enrollee.  42 U.S.C. § 1396b(m); 42 C.F.R. §§ 438.2, 438.3, 438.6; *see also* N.Y. Pub. Health Law § 4403-f.

21.    MLTCPs are MCOS with which the Medicaid program contracts to deliver long term care, including home care services. An MLTCP decides how many hours of home care each enrollee will receive and arranges for care through a network of providers that the MLTCP contracts with.

22.    By definition, an MCO must make medical services available to its enrollees to the same extent as services are made available to other Medicaid recipients in the same area who are not enrolled in the plan.  42 U.S.C. § 1396b(m)(1)(A)(i).

23.    In approving the New York Medicaid Redesign Team Section 1115 demonstration, CMS expressly provided that, with the exception of five enumerated provisions of the Medicaid Act not relevant here, "[a]ll requirements of the Medicaid

program expressed in law, regulation, and policy statement" continue to apply to New York's Medicaid program. *See* Centers for Medicare & Medicaid Services, Waiver Authorities, Waiver No. 11-W-00114/2 ("Waiver Authority") at 1, https://www.health.ny.gov/health_care/managed_care/appextension/docs/2019-04-19_ny1115_stc.pdf.

24.     Federal regulations require New York to include certain provisions in all contracts with MLTCPs to provide Medicaid-funded services, including the requirement that MLTCPs comply with all applicable laws. 42 C.F.R. §§ 438.3(f), 438.210(a).

25.     The contracts must further ensure "that the services are sufficient in amount, duration, or scope to reasonably be expected to achieve the purpose for which the services are furnished." 42 C.F.R. § 438.210(a)(3)(i).

26.     Additionally, State contracts with MLTCPs must "[s]pecify what constitutes 'medically necessary services' in a manner that . . . [i]s no more restrictive than that used in the State Medicaid program … as indicated in State statutes and regulations, the State Plan, and other State policy and procedures." 42 C.F.R. § 438.210(a)(5)(i).

27.     Pursuant to the New York Medicaid Redesign Team Section 1115 demonstration, in New York, Medicaid recipients who (a) receive Medicare in addition to Medicaid; (b) are eligible for "community based long term care" and (c) are expected to need at least 120 days of such care, must enroll in MLTCP plans. *See* Waiver Authority at 21 (Special Terms and Conditions).

28.     MLTCP services include home care services, adult day care, and physical and occupational therapies.

29.     Home care services include personal care services (custodial care), home health aide services, and part-time or intermittent nursing.  42 U.S.C. § 1396d(a)(7); 42 C.F.R. § 440.70; N.Y. Soc. Serv. Law § 365-a(2)(d); 18 N.Y. Comp. Codes R. & Regs. § 505.23; 10 N.Y. Comp. Codes R. & Regs. § 763.5.

30.     The majority of individuals enrolled with MLTCPs receive personal care services, which are those services that are essential to the maintenance of the patient's health and safety in his or her home, including preparing meals, assistance with personal hygiene, toileting, walking, and/or other identified tasks.  42 U.S.C. § 1396d(a)(24); 42 C.F.R. § 440.167; N.Y. Soc. Serv. Law §§ 365-a(2)(d), (e); 18 N.Y. Comp. Codes R. & Regs § 505.14(a)(1), (a)(5); *see* Centers for Medicare and Medicaid Servs., STATE MEDICAID MANUAL § 4480(C), at 4-495 (1999) (describing Medicaid coverage of personal care services).

31.     State law requires that MLTCPs reassess each enrollee at a minimum every 6 months.  N.Y. Pub. Health Law § 4403-f(7)(g)(iv).18 N.Y. Comp. Codes R. & Regs. §§ 505.14(b)(5)(iii), 505.14(b)(3)(iv)(a).

32.     State law requires that the assessment "shall include, but not be limited to, an evaluation of the medical, social, cognitive, and environmental needs of each prospective enrollee in such program. This assessment shall also serve as the basis for the development and provision of an appropriate plan of care for the prospective enrollee." N.Y. Pub. Health Law § 4403-f(7)(g)(i).

33.     Defendant Zucker requires MLTCPs to arrange for assessments and reassessments.  *See* DOH, Office of Health Insurance Programs, MLTC Policy 13.09

(Apr. 26, 2013), https://www.health.ny.gov/health_care/medicaid/redesign/mltc_policy_ 13-09.htm.

34.     Defendant Zucker directs MLTCPs to use a Uniform Assessment tool designed by the State, and to conduct assessments in the manner specified by Defendant Zucker.  *See id; see also* DOH, Office of Health Insurance Programs, MLTC Policy 13.09(a) (Sept. 24, 2013), https://www.health.ny.gov/health_care/medicaid/redesign/ docs/policy_13a_09_transition_of_saam_to_uas.pdf.

35.     Defendant Zucker retains the responsibility for ensuring that the rights of Medicaid recipients enrolled in MLTCPs are protected.  42 C.F.R. § 438.100(a), (d).

36.     To that end, federal law requires Defendant Zucker to supervise the activities of MLTCPs that provide Medicaid-funded services to New Yorkers, including by conducting reviews of the MLTCPs' records and patient files.  *See*, *e.g.*, 42 C.F.R. §§ 438.66, 438.228(b), 438.416, 438.726.

37.     Federal law further requires Defendant Zucker to establish intermediate sanctions that he may use against MLTCPs if Defendant Zucker determines that an MLTCP "[f]ails substantially to provide medically necessary services that the MCO is required to provide, under law or under its contract with the State, to an enrollee covered under the contract . . . ."  42 C.F.R. § 438.700(a), (b).

**Notice and Fair Hearing Rights**

38.     The Due Process Clause of the U.S. Constitution requires that timely and adequate notice be provided prior to any reduction in Medicaid benefits, with an opportunity to challenge the reduction before it takes place.

39.     Federal law mandates that Medicaid recipients have the opportunity to challenge any proposed reduction of Medicaid benefits in an administrative fair hearing and, to ensure that the fair hearing right is meaningful, recipients have a right to timely and adequate notice of their right to such a fair hearing, as well as the right to have their services continue unchanged until their fair hearing is decided.  42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.206(b), (c), 431.210, 431.211, 435.917, 435.912, 438.10(g)(xi), 438.210(c), (d), 438.404; *accord* N.Y. Soc. Serv. Law §§ 22, 365-a(8); 18 N.Y. Comp. Codes R. & Regs. §§ 358-2.2, 358-2.23, 358-3.3.

40.     Medicaid recipients who are enrolled with MLTCPs must request an internal appeal with their plan as a precondition to requesting a fair hearing.  These recipients are entitled to aid-continuing during the pendency of their internal appeal.  42 C.F.R. §§ 438.402, 438.404, 438.420.

41.     When an MLTCP determines to take an adverse action with respect to an enrollee, the MLTCP must send that enrollee a notice of adverse benefit determination. *See* 42 C.F.R. § 438.404.

42.     The adverse determination notice must explain, among other things, that the enrollee can request an internal appeal in order to challenge the proposed adverse action.  42 C.F.R. § 438.404.

43.     If, after conducting the internal appeal, the MLTCP upholds its own adverse action, then the MLTCP is required to send the enrollee a notice of appeal resolution, which among other things explains the enrollee's right to a fair hearing. *See* 42 C.F.R. § 438.408.

9

44.     Regardless of whether it is an initial or final adverse determination, any notice seeking to reduce care ("Reduction Notice") must, among other things:  explain the proposed action; state the reasons for the action; explain the recipient's right to a fair hearing; and explain the right to "aid-continuing," which means continuation of the recipient's services pending the appeal or fair hearing.  42 C.F.R. §§ 431.206, 431.210, 438.404(b), 438.408.

45.     Reduction Notices must be provided to Medicaid recipients at least ten days before the proposed decrease in order to give the recipient an opportunity to obtain aid-continuing before the proposed action would otherwise go into effect.  42 C.F.R. §§ 431.211, 438.404(c)(1).

46.     Medicaid recipients enrolled in an MLTCP that is seeking to reduce their care are entitled to a 10-day advance notice of their initial adverse determination and another 10-day advance notice of their final adverse determination. 42 C.F.R. §§ 431.211, 438.404, 438.408.

47.     In contrast, any notice denying a new request for care or a request for increased care ("Denial Notice"), must also explain the action being taken and the reasons for it but need not describe the right to aid-continuing because there is no threat to reduce or discontinue an existing service.  *Compare* 42 C.F.R. §438.210(d)(1) with §§ 438.420, 438.404(c), 431.211.

48.     Defendant Zucker requires MLTCPs to use standard notice templates that he has approved.  *See generally* MLTC Partial-Capitation Contract Appendix K, https://www.health.ny.gov/health_care/medicaid/redesign/mrt90_partial_capitation_contract.htm#appxk.

10

49.     The standard notice templates for a Reduction Notice include information about aid-continuing and how to request it.   In contrast, the standard notice templates for a Denial Notice do not provide information about aid-continuing and how to request it. *See* Department of Health, Service Authorization and Appeals, DOH Model Notices for Mainstream Medicaid Managed Care Plans, HARP, and HIV SNP, https://www.health.ny.gov/health_care/managed_care/plans/appeals/ (providing links to templates to be used by MLTCPs)

50.     Therefore, if an MLTCP sends a Denial Notice instead of a Reduction Notice even though the MLTCP is seeking to reduce care, the notice will not inform the enrollee of their right to aid-continuing or how to obtain aid-continuing.

51.     An MLTCP may only seek to reduce care if the decrease is justified based on a change in the recipient's medical condition, a change in circumstances that render the care no longer necessary, or if the MLTCP determines that a mistake had been made in a prior authorization. 18 N.Y. Comp. Codes R. & Regs. § 505.14(b)(5)(iv)(a), (b)(5)(iv)(c).

52.     An enrollee's transition to a different MLTCP because their previous MLTCP is closing or has closed in their service area is not a basis to reduce services and does not eliminate a Medicaid recipient's right to due process and fair hearing protections.

53.     Defendant Zucker's contracts with MLTCPs require them to send timely and adequate notices of termination and reduction in home care services. *See generally* MLTC Partial-Capitation Contract Appendix K, https://www.health.ny.gov/health_care/medicaid/redesign/mrt90_partial_capitation_contract.htm#appxk.

54.     Defendant Zucker has delegated to the New York State Office of Temporary and Disability Assistance ("OTDA") the function of conducting fair hearings, which includes scheduling and holding fair hearings, and issuing recommended Decisions After Fair Hearing ("DAFHs"), but retains final authority on the decisions and outcomes of all Medicaid fair hearings.

## CLASS ACTION ALLEGATIONS

55.     Named Plaintiffs Elsa Llambelis, Sonya Fridman, and Anita Samuel bring this action, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class of:

> All current and future New York City Medicaid recipients who receive home care services through VNSNY and who have suffered, since June 1, 2019, or who will suffer threatened or actual reductions of their home care services without timely and adequate notice.

56.     The class is so numerous that joinder of all class members in this action would be impracticable.  Upon information and belief, VNSNY has reduced or threatened to reduce the care of at least 40 enrollees, without providing timely and adequate notice.

57.     As of September 2019, nearly 18,000 individuals in New York City are enrolled to receive MLTCP services through VNSNY.  All enrollees are required to be reassessed at least two times per calendar year.  During each reassessment, each enrollee is at risk of having their care reduced.

58.     It would be impracticable for potential plaintiffs, who are, by definition, disabled and low-income individuals, to obtain legal services on an individual basis to

assert their claims.  Hence, their rights under the law may well be meaningless without certification of a class action seeking common redress.

59.    There are questions of law and fact common to the class about the systemic customs and practices described in more detail below including:

    a.    whether Defendant VNSNY has a systemic custom and practice of threatening to reduce or reducing its enrollees' home care services, without sending timely and adequate notices;

    b.    whether Defendant VNSNY has a systemic custom and practice of denying enrollees the opportunity of effectively challenging proposed reductions by describing those reductions as denials;

    c.    whether Defendant Zucker has a custom and practice of failing to ensure that VNSNY enrollees receive timely and adequate notices with the right to aid-continuing; and

    d.    whether, in engaging in the actions and practices described below, Defendant VNSNY and Defendant Zucker violate 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.211, 438.10(g)(xi); 438.210, 438.400-424; N. Y. Soc. Serv. Law § 22(12); 18 N.Y. Comp. Code R. & Regs. §§ 505.14(b)(5)(iv), 358-2.2, 358-2.23, 358-3.3, 358-3.6; and the Due Process Clauses of the 14th Amendment to the United States Constitution, U.S. CONST. AMEND. XIV, § 1; and of the New York State Constitution, N.Y. Const. Art. I, § 6.

60.    The Named Plaintiffs' claims are typical of the claims of the class in that they did not receive timely and adequate notice of the proposed reductions of their home

care services; the notices they did receive are inadequate because they purport to be Denial Notices even though they are notices of a potential reduction of the Named Plaintiffs' current level of services, allege no changes in conditions or other circumstances that would justify the reductions, and fail to provide notice of the right to aid continuing, thus depriving Plaintiffs of information critical to effective challenges.

61.    The Named Plaintiffs will adequately represent the interests of the class. They are members of the proposed class and there are no conflicts of interest between them and other proposed class members in that all proposed class members would benefit from obtaining timely and adequate notice of home care reductions or terminations with the attendant opportunity for fair hearings with aid continuing rather than erroneous and misleading notices that can result in the loss of vital medical services.

62.    Plaintiffs are represented by the New York Legal Assistance Group ("NYLAG"), Cardozo Bet Tzedek Legal Services, and JASA/ Legal Services for Elder Justice.

63.    NYLAG is a public interest law firm with extensive experience in litigating class action cases, including numerous cases involving public benefits, including Medicaid funded home care services.  For example, NYLAG was class counsel in *Shakhnes v. Eggleston*, 740 F. Supp. 2d 602 (S.D.N.Y. 2010) (certifying Rule 23(b)(2) class of Medicaid home health care recipients), *aff'd sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012); *Strouchler v. Shah,* 286 F.R.D. 244 (S.D.N.Y. 2012) (certifying Rule 23(b)(2) class of Medicaid home care recipients threatened with unlawful reductions in split shift care).

64.      Cardozo Bet Tzedek Legal Services is a clinical program at the Benjamin N. Cardozo School of Law that provides free legal services to low-income older adults and individuals with disabilities, including in class action litigation.  Cardozo Bet Tzedek Legal Services has served as class counsel in numerous cases involving Medicaid, Medicare and other public benefits, including *Pfeffer v. DOF*, No. 15-CV-03547 (E.D.N.Y.  2015) (certifying Rule 23(b)(2) class of elderly and disabled recipients of New York City rent freeze benefits denied reasonable accommodations in the benefit renewal process) and *Strouchler v. Shah,* 286 F.R.D. 244 (S.D.N.Y. 2012) (certifying Rule 23(b)(2) class of Medicaid home care recipients threatened with unlawful reductions in split shift care).

65.      JASA/Legal Services for Elder Justice is a free civil legal services program representing low income individuals 60 and older and is experienced in class action litigation, specifically class actions involving the rights of Medicaid applicants and recipients, including *Pfeffer v. DOF*, No. 15-CV-03547 (E.D.N.Y.  2015) (certifying Rule 23(b)(2) class of elderly and disabled recipients of New York City rent freeze benefits denied reasonable accommodations in the benefit renewal process) and *Strouchler v. Shah,* 286 F.R.D. 244 (S.D.N.Y. 2012) (certifying Rule 23(b)(2) class of Medicaid home care recipients threatened with unlawful reductions in split shift care).

66.      A class action is the appropriate method for a fair and efficient adjudication of this matter in that Defendants have acted or refused to act in a manner generally applicable to the class as a whole and a class action will avoid numerous separate actions by class members that would unduly burden the courts and create the

15

possibility of inconsistent decisions, thereby making final injunctive and declaratory relief appropriate as to the class as a whole.

## FACTS CONCERNING THE CLASS

### A. Harms Suffered by the Class

67.     Members of the proposed class depend on Medicaid-funded home care services provided through VNSNY and given by an aide or nurse, in order to remain safely in their own homes.  By definition, they cannot manage their activities of daily living alone. They have multiple medical conditions, many of which are chronic and degenerative, such as dementia and osteoarthritis. They require home care services for basic tasks including ambulation, toileting, and assistance with meal preparation and eating

68.     Many class members fall or are at risk of falling without adequate assistance for ambulating and transferring.  Other class members develop bed sores from lack of appropriate turning and positioning.  Lack of assistance often leads to an inadequate and irregular diet that may exacerbate pre-existing medical conditions such as diabetes or hypertension.  Lack of assistance with toileting leaves class members in unsanitary and unhygienic conditions.  Loss of basic housekeeping tasks, such as cleaning, places class members in unhygienic environments.

69.     Medicaid recipients who are deprived of their constitutional right to timely and adequate notice experience significant harm.  They are vulnerable to loss of necessary care without the appropriate opportunity to challenge such loss with aid continuing.

70.    Receipt of inadequate and confusing notices itself harms vulnerable recipients of home care services, who suffer acute anxiety about the threatened loss of necessary services.

**B. Defendants' Practices Regarding Reductions of Home Care Services**

71.    Pursuant to his obligations under the Medicaid Act and its implementing regulations, Defendant Zucker's contracts with Defendant VNSNY require VNSNY to comply with the Medicaid Act and its implementing regulations and state law and regulations in its processes to assess, authorize, provide, deny, reassess, reauthorize, increase, reduce, terminate and discontinue Medicaid-funded home care services for all Medicaid recipients receiving home care services through VNSNY. *See generally* MLTC Partial-Capitation Contract Art. II, https://www.health.ny.gov/health_care/medicaid/ redesign/mrt90_partial_capitation_contract.htm#a2; MAP Model Contract § 14.3(h), https://www.health.ny.gov/health_care/medicaid/redesign/mrt90_medicaid_adv_plus_mo del_contract.htm#s14.

72.    Defendant Zucker pays Defendant VNSNY a set monthly rate per each individual Medicaid recipient enrolled in VNS Choice MLTC as well as a set monthly rate for each individual enrolled in VNS Choice Plus.  This rate is the same for every recipient in each plan, regardless of the amount of care the recipient needs or is given.

73.    This capitated rate creates an incentive for Defendant VNSNY:  the less care it provides to each individual, the more it earns.

74.    Defendant VNSNY has a custom and practice of reducing the home care services of Medicaid recipients without identifying an improvement in the individual's

17

condition or other change in circumstances that would justify such a reduction in services.

75.     Defendant VNSNY has a custom and practice of characterizing such reductions in services in its notices to recipients as a denial of a request for an increase in care. This results in recipients bearing the burden of trying to prove the need for an "increase," and having their home care services reduced or threatened to be reduced without the opportunity to first challenge the proposed reduction through the fair hearing process.

**C.  Defendant Zucker's Practices and Knowledge of VNSNY's Practices**

76.     Defendant Zucker knows that VNSNY is engaging in the practices described above.

77.     Upon information and belief, Defendant Zucker has received complaints about VNSNY's improper threats to reduce care and actual reductions of care, including reductions with improper notices, through his complaint hotlines and the independent ombudsman program.

78.     On September 16, 2019, NYLAG sent to Defendant Zucker's office a letter complaining about VNSNY's actions, which contained information about two individuals, one of whom was Ms. Fridman.

79.     To date, Defendant Zucker has not intervened to reverse VNSNY's determinations.

80.     Defendant Zucker has not stopped VNSNY from sending current home care recipients legally inadequate Reduction Notices.  Upon information and belief, Defendant Zucker has also failed to direct VNSNY to conduct a review of past Denial

Notices and take action to correct those that should have been Reduction Notices, and to restore care to any recipients who lost care as a result.

81.    Other members of the proposed class have challenged similar notices through the fair hearing process and Defendant Zucker has issued DAFHs reversing VNSNY's reduction determinations based on the issuance of defective notices issued as service denials without appropriate rights or the identification of any appropriate basis for a reduction in services. Despite this, Defendant Zucker has taken no steps to prevent VNSNY from continuing to send inadequate and improper reduction notices.

82.    Defendant Zucker has failed to ensure that class members' rights under the Medicaid Act, relevant state laws, and the Due Process clauses of the United States and New York Constitutions are protected.

## FACTS CONCERNING NAMED PLAINTIFFS

**ELSA LLAMBELIS**

83.    Elsa Llambelis is an 86-year-old woman who lives alone in Manhattan. She receives Medicare and Medicaid and receives home care services through VNSNY.

84.    In addition to being elderly and frail, Ms. Llambelis suffers from numerous medical conditions including, hypertension, diabetes, obstructive sleep apnea, incontinence, pulmonary embolism, depression, deep venous thrombosis, dyspnea, dyslipidemia, osteoarthritis, obesity, mild memory loss, and vision and hearing impairment.

85.    As a result of her medical condition, Ms. Llambelis needs assistance with most of her activities.  She needs assistance to bathe, to dress, and with all household chores.  She is incontinent and needs assistance to go to the bathroom.

86.     Because she needs assistance with these and other tasks, Ms. Llambelis has been receiving home care services, 8 hours per day, 7 days per week, for over 2 years.

87.     Ms. Llambelis's daughter, Wanda Llambelis, lives in the same building and cares for her mother every evening after the aide leaves until her mother goes to sleep, and she returns in the morning to give her mother medication and a snack before the aide arrives.

88.     Ms. Llambelis has been enrolled with VNSNY since January 1, 2019. Prior to that she was enrolled with another MLTCP that ended operations.

89.     After Ms. Llambelis joined VNSNY, the MLTCP continued to provide her with home care services 8 hours per day for many months. Then, on September 5, 2019, VNSNY sent Ms. Llambelis a "Denial Notice," which stated:

> Before this decision, from 05/01/2019 to 10/31/2019, the plan approved:
> Personal Care Services, 8 hours a day, 7 days a week
> On 05/08/2019 you or your provider requested approval for:
> Personal Care Services, 8 hours a day, 7 days a week
> On 8/27/2019, the plan approval **is only for**:
> Personal Care Services, 6 hours a day, 7 days a week.
> This means from 09/19/2019 to 10/31/2019, your service is approved for:
> Personal Care Services, 6 hours a day, 7 days a week

90.     Although the notice proposed to reduce her services from 8 hours to 6 hours a day, the notice that VNSNY sent to Ms. Llambelis was not the standard Reduction Notice but rather the standard Denial Notice.

91.     Because VNSNY sent Ms. Llambelis the standard Denial Notice, the notice did not describe how Ms. Llambelis can obtain aid-continuing by appealing within ten days.

92.     The notice also does not describe any change in Ms. Llambelis's medical condition, or social circumstances, or otherwise, to explain how an 86-year-old woman who was previously determined to need home care services 8 hours per day, now only needs those services 6 hours per day.

93.     The section of the notice that explains the basis of the determination states:

> The transitional period for you [sic] Long Term Home Health care services has come to an end on 3/31/2019.  The plan reviewed your plan of care dated 7/08/2019 to reevaluate your needs. Based on this assessment and review of clinical documentation from your nurse, the plan has found that you are alert, you can direct your care.  You live alone.  Your daughter is supportive. She is involved with your care and assists as needed.  Per record review, you need help with bathing, transfer, and toilet.  You walk with a rolling walker.  You have a cane and a walker to help you to walk. You have a shower chair and grab bars to help you with bathing.  Your incontinence is managed by pullups.  VNSNY Choice provides you with a Personal Emergency Response System (PERS).  This can be used to help you in case of an emergency.  Therefore, your current needs can be safely met with 6 hours a day, 7 days a week of personal care services.  The plan can offer to split your current schedule to meet your morning and evening needs such as bathing, dressing toileting, and meals. The newly approved schedule of 6 hours a day, 7 days a week will be enough to meet all your needs.

94.     On September 9, 2019, Ms. Llambelis's daughter requested an internal appeal to challenge VNSNY's determination to reduce her home care services.

95.     On September 13, 2019, VNSNY sent Ms. Llambelis a Final Adverse Determination upholding the original determination to reduce Ms. Llambelis's services from 8 hours per day to 6.

96.     Once again, VNSNY used the standard Denial Notice for when a recipient requests an increase in care.

21

97.     Because VNSNY used the standard Denial Notice, the notice did not advise Ms. Llambelis about her right to aid-continuing or how to obtain aid-continuing.

98.     The VNSNY Final Adverse Determination Denial Notice did not describe any change in Ms. Llambelis's medical condition, or social circumstances, or otherwise, to explain how an 86-year old woman who was previously determined to need home care services 8 hours per day, now only needs those services 6 hours per day.

99.     The section of the notice that explains the basis of the determination states:

> Your daughter asked the plan to increase your personal care services because you are getting older, have some weakness, and need additional assistance with your daily activities.
>
> Your care management record was reviewed.  The nurse saw you in your home on 07/08/2019. Your last assessment indicates that you know who you are, you know the time, and your location.  You are self-directed and able to direct your care. You need assistance with bathing, toileting, shopping, dressing, housekeeping, and laundry.  You walk with a rolling walker and cane to help you walk indoors and outdoors with supervision. You can groom yourself and brush your teeth.  You can eat on your own with the aide's supervision.  Your daughter lives in the same building as you and takes care of you when the aide is not there.  Your daughter assists with checking your blood sugar, taking insulin, and other medications.
>
> Time is not provided when there are no tasks being done or for safety supervision or companionship.  The plan provides you with items in the home which can assist in your care including your walker, pullups to keep you dry, a shower chair, and grab bars to help you in the shower.  You also have a personal emergency response system (PERS) which you know how to use in case of emergency.

100.    Even though the notice states that Ms. Llambelis's daughter asked for an increase, neither Ms. Llambelis nor her daughter requested an increase. They just wanted Ms. Llambelis's care to remain the same.

101. On September 19, 2019 Ms. Llambelis's home care services were reduced from 8 hours per day to 6 hours per day.

102. On October 1, 2019, Ms. Llambelis requested a fair hearing from OTDA and sent OTDA the notice of action issued by VNSNY.

103. OTDA did not properly identify the issue as a reduction and did not order aid-continuing.

104. Wanda Llambelis contacted NYLAG for assistance on October 7, 2019.

105. On October 9, 2019 an attorney at NYLAG contacted OTDA and after extensive advocacy, OTDA agreed to order aid-continuing.

106. VNSNY did not comply with the aid to continue directive until October 15, 2019.

107. As a result of VNSNY's actions, Ms. Llambelis's authorization for home care services was reduced for nearly an entire month.

108. In transmitting the evidence packet for Ms Llambelis's fair hearing, a VNSNY attorney described the MLTCP's position in the fair hearing in the following way, "The above member challenges through this fair hearing the Plan's determination to deny the member's request for an increase."

109. The fair hearing has not yet been held.

**SONYA FRIDMAN**

110. Sonya Fridman is a 90-year-old woman who lives alone in Brooklyn. She is a recipient of Medicaid and Medicare who receives home care services through VNSNY.

111.    In addition to being elderly and frail, Ms. Fridman suffers from numerous medical conditions including non-Hodgkin lymphoma, hypogammaglobulinemia, essential hypertension, osteopenia, shortness of breath, coronary artery disease, aortic stenosis, chronic diastolic congestive heart failure, gastroesophageal reflux disease, dysphagia, pulmonary fibrosis, pulmonary aspergillosis, obstructive lung disease, osteoarthritis, diverticulosis, anxiety, incontinence, and hearing loss.

112.    As a result of her medical condition, Ms. Fridman needs assistance with most of her activities.  She needs assistance to bathe, dress, and with all household chores.  She is unstable on her feet and needs contact guarding from a person to ambulate safely, including to the bathroom and to her bed, or else she is at great risk of falling. Ms. Fridman is on a special diet of liquids and blended foods that she cannot prepare herself, so she needs her aide to prepare all of her meals.

113.    Because she needs assistance with these and other tasks, Ms. Fridman has been receiving home care services, 12 hours per day, 7 days per week, for 2 years.

114.    Prior to December 1, 2018, Ms. Fridman was enrolled with an MLTCP that closed, and she was then transferred to VNSNY.

115.    VNSNY continued to provide Ms. Fridman with home care services 12 hours per day for many months, but on August 28, 2019, VNSNY sent Ms. Fridman a "Denial Notice" which stated:

> Before this decision, from 05/02/2019 to 09/30/2019, the plan approved Personal Care Services, 12 hours a day, 7 days a week.
> On 07/03/2019 you or your provider requested approval for:
> Personal Care Services, 12 hours a day, 7 days a week.
> On 8/23/2019, the plan approval **is only for:**
> Personal Care Services, 8 hours a day, 7 days a week.
> This means from 09/11/2019 to 12/31/2019, your service is approved for:
> Personal Care Services, 8 hours a day, 7 days a week.

116.    Although the notice proposed to reduce her services from 12 hours to 8 hours a day, the notice that VNSNY sent to Ms. Fridman was not the standard Reduction Notice but rather the standard Denial Notice.

117.    Because VNSNY sent Ms. Fridman the standard Denial Notice, the notice did not describe how Ms. Fridman can obtain aid-continuing by appealing within 10 days.

118.    The notice also did not describe any change in Ms. Fridman's medical condition, social circumstances, or otherwise, to explain how a 90-year-old woman who was previously determined to need home care services 12 hours per day, now only needs those services 8 hours per day.

119.    The section of the notice that explains the basis of the determination states:

> The transitional period for your long-term home health care services has come to an end on 3/31/2019. The plan reviewed your plan of care dated 07/07/2019 to reevaluate your needs. Based on this assessment and review of clinical documentation from your nurse, the plan has found that you are alert, and your memory is good. You live alone. Per record review, you need help to bathe and dress. You need help to walk and to transfer. You have a walker, a shower chair, and grab bars to help you with ambulation and bathing. You also need help to toilet yourself. You can toilet yourself with a urinary catheter three times a day. You have a commode and supplies for catheterization. Therefore, your current needs can be safely met with 8 hours a day, 7 days a week of personal care services. The plan can offer to split your current schedule to meet your morning and evening needs such as bathing, dressing toileting, and meals. The plan provides you with a Personal Emergency Response System (PERS). This can be used to help you in case of an emergency. Also, your incontinence needs are met with incontinence supplies. The newly approved schedule of 8 hours a day, 7 days a week will be enough to meet all your needs.

120.    On September 8, 2019, Ms. Fridman requested an internal appeal to challenge VNSNY's determination to reduce her home care services.

25

121.    On September 11, 2019, Ms. Fridman's home care services were reduced from 12 hours per day to 8 hours per day, even though there had not yet been a decision on her internal appeal.

122.    On September 12, 2019, VNSNY sent Ms. Fridman a Final Adverse Determination Denial Notice upholding the original determination to reduce Ms. Fridman's services from 12 hours per day to 8.

123.    Once again VNSNY used the standard appeal notice for a denial case instead of the standard notice required for a reduction case.

124.    Because VNSNY used the standard notice for a denial, the notice did not advise Ms. Fridman about her right to aid-continuing or how to obtain it.

125.    The VNSNY Final Adverse Determination Denial Notice did not describe any change in Ms. Fridman's medical condition, or social circumstances, or otherwise, to explain how a 90-year-old woman who was previously determined to need home care services 12 hours per day, now only needs those services 8 hours per day.

126.    The section of the notice that explains the basis of the determination states:

> The request to increase your personal care services continues to be denied. Your care management notes were reviewed, and a nurse made a visit to your home on 07/3/2019 to evaluate your personal care needs. You are alert and oriented to person, place, and time with periods of forgetfulness. You can make your needs known and direct your care. You can pre-pour your medications on your own and need help opening the bottles. You can eat on your own. You do not have a history of frequent falls and can walk with your rolling walker. You have the following items to help you with your care: a cane, a rolling walker, oxygen, a commode, a raised toilet seat, grab bars, a shower chair, and adult protective underwear. You can toilet yourself by using a tube to empty your bladder 3 times per day (urinary catheter). You also have a Personal Emergency Response System (PERS) which is a device used to call for emergency with a push of a button in your home.

26

Your care needs can be met with your current services.  The aide helps you with preparing meals, housekeeping, laundry, shopping, dressing, and bathing. You are currently approved for 8 hours a day, 7 days a week of personal care services.  Giving more hours to have someone in your home will not stop falls or accidents. Time is not provided when there are no tasks being done for companionship, or for safety supervision. The plan recommends a split schedule to meet your morning and evening needs (9am-12pm and 4pm – 8pm).  We have asked your care manager to follow-up with other community resources to make sure the right plan is in place for you.

127.    Through her daughter, Ms. Fridman reached out to NYLAG for assistance.

128.    NYLAG requested a fair hearing and aid-continuing from OTDA on September 11, 2019, even though Ms. Fridman had not yet received her Final Adverse Determination because on that date VNSNY had already reduced her care.

129.    As a result of extensive advocacy, the fair hearing request was processed on an expedited basis and the aid-continuing directive communicated to VNSNY.

130.    On September 12, 2019, VNSNY complied with the aid-continuing directive and restored Ms. Fridman's hours to 12 hours per day, pending the outcome of the fair hearing.

131.    The fair hearing has not yet been held.

**ANITA SAMUEL**

132.    Named Plaintiff ANITA SAMUEL is a 78-year old woman who lives alone in the Bronx. She is a recipient of Medicaid and Medicare who receives home care services through VNSNY.

133.    Ms. Samuel suffers from numerous medical conditions, including legal blindness of both eyes, obesity, hypertension, a herniated disc, knee pain, abnormal gait, shoulder arthritis, and incontinence.

134.    As a result of her medical conditions and related limitations, Ms. Samuel needs assistance with many activities in the home. She needs assistance with walking, taking medications twice a day, bathing, dressing, grooming, cooking, household chores, and traveling from her home.

135.    She is at a great risk of falling and greatly depends on the assistance of her home attendant to walk in her apartment and outdoors.  Additionally, although Ms. Samuel has a bedside commode, she is no longer able to use it because of her instability and tendency to fall.

136.    Because she needs assistance with these various home care tasks, Ms. Samuel has been receiving home care services in the amount of 8 hours per day for 3 days a week, and 6 hours per day for 4 days a week. On the days on which she attends adult day care, she receives 6 hours of services.  On those days, the home attendant assists Ms. Samuel for 2 hours in the morning before day care and 4 hours in the afternoon and evening, after she returns, to settle her in for the night.

137.    On the days when she receives 8 hours of services, the home attendant helps her from the morning to the early evening.

138.     Ms. Samuel has been receiving her current home care services in the amount of 8 hours/3 days a week, and 6 hours/4 days a week for the last two years. She had previously been enrolled with an MLTCP that ended operations and enrolled with VNSNY on or about December 1, 2018.

139.    After Ms. Samuel enrolled with VNSNY, she continued to receive her long-standing home care services of 8 hours/3 days a week, and 6 hours/4 days a week

28

for many months. Then, on August 26, 2019, VNSNY sent Ms. Samuel a "Denial

Notice," which stated:

> Before this decision, from 04/01/2019 to 09/30/2019, the plan approved:
> Personal Care Services - 8 Hours x 3 Days & 6 Hours x 4 days.
> On 03/21/2019 you or your provider requested approval for:
> Personal Care Services - 8 Hours x 3 Days & 6 hours a day, 4 days.
> On 8/27/2019, the plan approval **is only for**:
> Personal Care Services - 6 Hours x 3 Days a week & 4 Hours x 4 Days.
> This means from 08/27/2019 to 09/30/2019, your service is approved for:
> Personal Care Services, 6 Hours x 3 Days & 4 Hours x 4 Days.

140.    Although the notice proposed to reduce her services by 2 hours every day,

the notice that VNSNY sent to Ms. Samuel was not the standard Reduction Notice but

rather the standard Denial Notice.

141.    Because VNSNY sent Ms. Samuel the standard Denial Notice, the notice

did not describe how Ms. Samuel could obtain aid-continuing by appealing within 10

days.

142.    The notice also did not describe any change in Ms. Samuel's medical

condition, social circumstances, or otherwise, to explain how a 78-year old woman with

chronic conditions who was previously determined to need home care services 48 hours

per week, now only needs those services 34 hours per week.

143.    The section of the notice that explains the basis of the determination

states:

> The transitional period for you [sic] Long Term Home Health Care
> services had come to an end on 03/31/2019.  The plan reviewed your plan
> of care on 06/26/2019. Based on the nurse's visit and the notes from your
> nurse, the plan has determined that you are alert, your memory is good.
> You have a personal emergency response system (PERS) that you can use
> in case of an emergency. You live alone. You can manage your own
> medications. You can manage your incontinent care. You have a bedside
> commode. You need assistance with bathing and dressing. Also, you
> attend Social Adult Day Care 4 days per week. Therefore, your current

29

needs can be safely met with 6 hours a day, 3 days and 4 hours a day, 4 days a week of aide services. You have a shower chair and grabs [sic] bars to assist with bathing. The newly approved schedule of 6 hours a day, 3 days and 4 hours a day, 4 days a week will be enough to meet all your needs.

144.    Initially, the Director at her day care program assisted Ms. Samuel by filing an internal appeal and a representative from Independent Consumer Advocacy Network (ICAN) requested aid to continue on her behalf while her appeal was pending.

145.    On September 30, 2019, VNSNY sent Ms. Samuel a Final Adverse Determination Denial Notice upholding the original determination to reduce Ms. Samuel's services by two hours per day.

146.    Once again, VNSNY used the standard Denial Notice for when a recipient requests an increase in care.  Because VNSNY again used the standard Denial Notice, the notice did not advise Ms. Samuel about her right to aid-continuing or how to obtain aid-continuing.

147.    Like the initial Denial Notice, the VNSNY Final Adverse Determination Denial Notice did not describe any change in Ms. Samuel's medical condition, or social circumstances, or otherwise, to explain how a 78-year old woman who was previously determined to need home care services 8 hours per day for 3 days a week, and 6 hours per day for 4 days a week, now only needs those services 6 hours per day for 3 days a week, and 4 hours per day for 4 days a week.

148.    The section of the notice that explains the basis of the determination states:

Your representative asked the plan to increase your personal care services to eight (8) hours x three (3) days and six (6) hours x four (4) days a week. A nurse visited you on 6/26/2019 to evaluate your current personal care needs. It showed you

30

need help with preparing meals, housekeeping, laundry, shopping, dressing, bathing, and personal hygiene (combing your hair, brushing your teeth).

Your care management record was reviewed, and your care needs can be met with your current services. You are alert and able to direct your own care. You are legally blind. You can move around your home with a blind cane. You have control over your bowels. You use pull ups to stay dry. You attend Social Adult Day Care 4 days per week. You are currently receiving thirty-four (34) total service hours per week to meet your care needs in addition to items in the home. You have a blind cane, pull ups, a shower chair, a raised toilet seat, grab bars, and a bedside commode in your home to assist with your care. You have a personal emergency response system (PERS) that you can use in case of an emergency.

149.    Even though the notice states that Ms. Samuel's representative asked for an increase, neither Ms. Samuel nor her representative had requested an increase at that time and rather had only attempted to prevent her care from being decreased.

150.    On October 4, 2019, Ms. Samuel requested a fair hearing from OTDA and sent OTDA the notice of action issued by VNSNY.

151.     The fair hearing has not yet been held.   Because of an aid-continuing order from OTDA, Ms. Samuel continues to receive the same service hours that she has been receiving for the last two years.

## FIRST CAUSE OF ACTION
### (*Against Defendant VNSNY*)

152.    Defendant VNSNY's custom and practice of threatening to reduce, and of actually reducing, home care services without first providing a timely and adequate notice of such adverse action, violates Plaintiffs' rights under 42 U.S.C.§ 1396a(a)(3) and its implementing regulations at 42 C.F.R. § 431.200 *et seq.* and § 438.100 *et seq.*; N.Y. Soc. Serv. Law § 22(12) and its implementing regulations; and the Due Process clauses

of the 14th Amendment to the United States Constitution, U.S. CONST. AMEND. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

## SECOND CAUSE OF ACTION
### (*Against Defendant Zucker*)

153.    Defendant Zucker's custom and practice of failing to ensure that Defendant VNSNY provides timely and adequate notices when threatening to reduce or actually reducing home care services, despite his knowledge of VNSNY's custom and practice of failing to send such notices, violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3) and its implementing regulations at 42 C.F.R. § 431.200 *et seq.* and § 438.100 *et seq.*; N.Y. Soc. Serv. Law § 22(12) and its implementing regulations; and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. CONST. AMEND. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment:

1.    Certifying this case as a class action, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the class defined as:

> All current and future New York City Medicaid recipients who receive home care services through VNSNY and who have suffered, since June 1, 2019, or who will suffer threatened or actual reductions of their home care services without timely and adequate notice.

2.    Declaring that:

a.    Defendant VNSNY's custom and practice of threatening to reduce, and actually reducing, home care services without first providing timely and adequate notice violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3) and its implementing regulations at 42 C.F.R. § 431.200 *et seq.* and § 438.100 *et*

32

*seq.*; N.Y. Soc. Serv. Law § 22(12) and its implementing regulations; and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. CONST. AMEND. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

b.      Defendant Zucker's custom and practice of failing to ensure that VNSNY provides timely and adequate notice when they threaten to reduce or reduce home care services violates Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3) and its implementing regulations at 42 C.F.R. § 431.200 *et seq.* and § 438.100 *et seq.*; N.Y. Soc. Serv. Law § 22(12) and its implementing regulations; and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. CONST. AMEND. XIV, § 1, and of the New York State Constitution, N.Y. Const. Art. I, § 6.

3.      Enjoining:

a.      VNSNY from threatening to reduce, and actually reducing, home care services without first providing timely and adequate notice;

b.      VNSNY to withdraw all notices sent to any class member on or after June 1, 2019, threatening to reduce care, unless the recipient of the notice has successfully challenged the proposed reduction through the fair hearing process or otherwise;

c.      Defendant Zucker to ensure that Defendant VNSNY restores care to all enrollees whose care was reduced pursuant to an untimely, inadequate notice sent on or after June 1, 2019.

d.       VNSNY to restore care to any enrollee whose care was reduced pursuant to an untimely inadequate notice sent on or after June 1, 2019;

e.       Defendant Zucker to ensure that Defendant VNSNY provides timely and adequate notice whenever they threaten to reduce or reduce home care services;

f.       Defendant Zucker to issue a Policy Directive to all MLTCPs directing the MLTCPs that any notice that seeks to reduce the amount of services an enrollee was previously receiving must be timely and adequate and utilize the standard Reduction Notice template.

4.       Awarding reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5.       Awarding costs and disbursements; and

6.       Granting such other and further relief as the Court may deem just and proper.

Dated:  November 8, 2019
New York, New York

NEW YORK LEGAL ASSISTANCE GROUP
BETH GOLDMAN, ESQ.

By:    */s/ Jane Greengold Stevens*
Jane Greengold Stevens, of counsel
Benjamin W. Taylor, of counsel
Elizabeth Jois, of counsel
7 Hanover Square, 18th Floor
New York, NY 10004

Telephone: (212) 613-5000
Facsimile: (212) 750-0820
Email:  jstevens@nylag.org
Email:  btaylor@nylag.org
Email:  ejois@nylag.org

34

LESLIE SALZMAN, ESQ.
REBEKAH DILLER, ESQ.
Cardozo Bet Tzedek Legal Services
55 Fifth Ave., 11th Floor
New York, NY 10003

Telephone: (212) 790-0240
Email: Salzman@yu.edu
Email: Rebekah.Diller@yu.edu

JASA/ LEGAL SERVICES FOR ELDER
JUSTICE
Donna Dougherty, Esq.
97-77 Queens Boulevard Suite 600
Rego Park, NY 11374

Telephone: (718) 286-1515
Email:  ddougherty@jasa.org

*Counsel for Plaintiffs, individually and on
behalf of all others similar situated*